**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Karen TALBOT; Hazel Grossman,
Defendants–Appellees.**

No. 94–10003.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1994.

Decided March 21, 1995.

Jeffrey D. Nedrow, Asst. U.S. Atty., San Francisco, CA, for plaintiff-appellant.

Bobbie Stein, San Francisco, CA, for defendants-appellees.

Before: GOODWIN, O'SCANNLAIN, and KLEINFELD, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must resolve procedural issues arising out of the arrest of protest demonstrators on the steps of the federal courthouse in San Francisco by Federal Protective Service police for violation of federal property management regulations.

I

On January 15, 1993, Talbot and Grossman participated in a protest demonstration at the Philip Burton Federal Building and Courthouse on Golden Gate Avenue in San Francisco. Federal Protective Service ("FPS") police closed off the entrance to the building and hung tape reading "Police Line—Do Not Cross." Despite these warnings, a group of seventeen protesters, including Talbot and Grossman, stepped over the police tape and ascended the steps of the building. FPS officers warned the protesters that they would be arrested if they did not leave. Following a third such warning, FPS officers arrested the seventeen demonstrators. Each demonstrator received two

citations: one for entering an unauthorized area without permission, in violation of 41 C.F.R. § 101–20.302 ("section 302"), and one for failing to obey the lawful order of a Federal Protective Services officer, in violation of 41 C.F.R. § 101–20.304 ("section 304").

Trial of the charges against Talbot and Grossman was set for November 29, 1993. When the government filed its pretrial brief, in late October 1993, it superseded the original citations with an information. This information restated the two counts alleged in the original citations and added a third count: creating a disturbance, in violation of 41 C.F.R. § 101–20.305 ("section 305"). Pursuant to a pretrial discovery order, the government also named in its pretrial brief the witnesses it intended to call at trial. The list did not contain a designated official who could testify to authorizing the closure of the building, a prerequisite to a charge under section 302.

Talbot and Grossman filed a motion to dismiss the information, claiming that the government's late filing had left them with insufficient time to prepare their case for trial in light of the new count. The district court agreed with Talbot and Grossman and, on November 23, 1994, the court dismissed the section 305 count.

The next day, the government filed an addendum to its pre-trial brief, naming a witness who could testify to having authorized the closing of the building. Because of the government's failure to identify this witness in its pretrial witness list, however, the district court excluded this witness from the government's case.

The government conceded that it could not prove the section 302 count without the testimony of the excluded witness. Based on this concession, the court then dismissed both the section 302 count and the remaining section 304 count, reasoning that the section 304 count could not stand alone, but instead must be accompanied by a second charge under the same subpart, 41 C.F.R. § 101–20.3.

The government timely appealed, seeking the reinstatement of all counts.

## II

We first consider the district court's dismissal of the section 305 count. Aside from allusions to lateness and possible prejudice, the district court did not expressly identify the grounds upon which it based its dismissal of this count. There are four relevant grounds that provide a district court with the authority to dismiss an information: (1) the Speedy Trial Act; (2) due process; (3) Rule 7(e) of the Federal Rules of Criminal Procedure; and (4) Rule 48(b) of the Federal Rules of Criminal Procedure.

### A

The Speedy Trial Act requires that "[a]ny information ... charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If this Act applied, the government's third count could be dismissed as it was filed well over thirty days after the arrest of Talbot and Grossman.

■ The Speedy Trial Act expressly states that it does not apply to Class B and C misdemeanors, however. 18 U.S.C. § 3172(2). Class C misdemeanors are defined as those crimes for which the maximum term of imprisonment authorized is thirty days or less. 18 U.S.C. § 3559(a)(8). The maximum penalty for each of the three charges contained in the information at issue is thirty days imprisonment and a $50 fine. 41 C.F.R. § 101–20.315. Thus, these offenses are all Class C misdemeanors, which the Speedy Trial Act does not govern.

### B

■ In some instances, although an information is filed in conformity with the statute of limitations, the Due Process Clause of the Fifth Amendment nonetheless mandates dismissal. This court has applied a two-part test to determine whether a delay in charging violated due process: "(1) the defendant must prove actual, non-speculative prejudice from the delay; and (2) the length of the delay, when balanced against the reason for the delay, must offend those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United*

*States v. Huntley,* 976 F.2d 1287, 1290 (9th Cir.1992) (quotation omitted).

■ It is unnecessary to reach the balancing portion of this test as Talbot and Grossman have not made a sufficient showing of prejudice. In demonstrating actual prejudice, the defendant's burden is a heavy one: " 'the proof must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case.' " *United States v. Sherlock,* 962 F.2d 1349, 1353–54 (9th Cir. 1989), *cert. denied sub nom. Charley v. United States,* — U.S. ——, 113 S.Ct. 419, 121 L.Ed.2d 342 (1992) (quoting *United States v. Moran,* 759 F.2d 777, 782 (9th Cir.1985), *cert. denied,* 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986)).

Talbot and Grossman make only one argument concerning loss of evidence. They contend that although they received notice of the information and the newly-added third count thirty-three days prior to trial, their motion to dismiss the information was not heard until six days prior to trial. As they were unsure whether the newly-added section 305 count would be tried, they chose not to expend funds to contact witnesses necessary to disprove this count. Had the district court permitted the addition of the section 305 count, Talbot and Grossman conclude, they would have had difficulty reaching the necessary witnesses over the Thanksgiving weekend in preparation for trial the following Monday.

This difficulty does not constitute prejudice. Talbot and Grossman make no allegations that necessary witnesses are no longer available, or that their memories have dimmed. Although it is possible that defense counsel might have had difficulty in contacting witnesses over the Thanksgiving holiday, this inconvenience is speculative and does not rise to the level of a denial of due process. Moreover, any harm resulting from this difficulty would be the result of defense counsel's strategy, and not of governmental delay. Due process therefore does not mandate dismissal.

C

■ Federal Rule of Criminal Procedure 7(e) provides:

The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

Talbot and Grossman contend that the count alleging a violation of section 305 constituted a "different offense," and thus that Rule 7(e) mandated its dismissal.

Rule 7(e) does not apply in the instant case, however. Rule 7(e) governs the amendment of informations. In the present case, the government did not so amend. Rather, the government substituted one accusatory instrument—the citation—with another—the information—prior to the commencement of trial. The information thus served as a superseding instrument.

■ Despite Talbot's and Grossman's argument to the contrary, the addition of section 305 to the citation was not tantamount to amending an information. Superseding accusatory instruments can contain additional counts not charged in prior instruments. *See, e.g., United States v. Brewer,* 681 F.2d 973, 974 (5th Cir.1982) (permitting an indictment charging misdemeanor offenses to be superseded by an information charging two additional counts).

D

A court may dismiss an information under Federal Rule of Criminal Procedure 48(b) "[i]f there is unnecessary delay ... in filing an information against a defendant who has been held to answer to the district court." Rule 48(b) also allows for dismissal in the case of pre-indictment delay and pre-trial delay.

■ Although the Rule allows a judge discretion in dismissing an information, "a Rule 48(b) dismissal 'should be imposed only in extreme circumstances.' " *Huntley,* 976 F.2d at 1291 (quoting *United States v. Sears, Roebuck & Co.,* 877 F.2d 734, 737 (9th Cir.1989)). This court has held that a district court may dismiss a count under Rule 48(b) only "with

caution" and only after "forewarning" prosecutors of the consequences of their delay. *United States v. Simmons*, 536 F.2d 827, 836 (9th Cir.1976), *cert. denied*, 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976).[1]

■ We find no indication of forewarning in the record before us. At no point did the district court note that it might bar the filing of an additional count, nor did the court warn the government that the addition of a count nine months after the citation was issued would be grounds for dismissal.[2]

Similarly, the district court failed to exercise caution in its dismissal. The caution requirement is satisfied where the reason for dismissal is "prosecutorial misconduct and demonstrable prejudice or substantial threat thereof." *United States v. Hattrup*, 763 F.2d 376, 378 (9th Cir.1985). The district court made no finding that the prosecution had engaged in any sort of misconduct. The court stated only that it was too close to trial for the prosecution to amend and pointed to the fact that the government had sufficient opportunity to amend the charges earlier in the proceedings. This is insufficient to satisfy the requirement of caution, however. "In general dismissal under Rule 48(b) is appropriate only where there is delay that is purposeful or oppressive." *Sears, Roebuck & Co.*, 877 F.2d at 739 (quotation omitted); *see*

*also United States v. Towill*, 548 F.2d 1363, 1370 (9th Cir.1977).

We find that the district court lacked authority to dismiss the section 305 count. Such dismissal was reversible error.

### III

■ We next consider the district court's exclusion of the government's witness. In *United States v. Gatto*, 763 F.2d 1040 (9th Cir.1985), this court held that the separation of powers principle limits the supervisory powers of the district courts in government cases. Consequently, a district court can exclude otherwise admissible government evidence only when a violation of "any constitutional provision, federal statute, specific discovery order, or any other recognized right" has been shown. *Id.* at 1046.

■ In the instant case, the district court ordered the government to file a pretrial witness list, pursuant to Rule 325–1(i) of the Local Rules of Practice for the United States District Court for the Northern District of California.[3] The court reiterated its request at pretrial conference, asking the government if it had provided "an entire list of witnesses that [it] intended to call." Despite the court's order, the government did not name its witness until several weeks after its pretrial papers had been filed. The govern-

---

1. The stringent requirements set forth in *Simmons* have been applied primarily in cases where the information was dismissed with prejudice. Although the district court did not specify whether it was dismissing the § 305 count with prejudice, the *Simmons* analysis nonetheless applies to the instant case. The district court premised its dismissal upon the government's late filing, a defect that the government could not cure by refiling. Consequently, the dismissal terminated litigation as to this count and had the same final effect as a dismissal with prejudice. *See Sears, Roebuck & Co.*, 877 F.2d at 738 n. 1 (48(b) analysis would still apply had case been dismissed without prejudice because dismissal had same effect as dismissal with prejudice—applicable statute of limitations had run and, consequently, the defendants could not be reindicted); *United States v. Clay*, 481 F.2d 133, 136–37 (7th Cir.1973), *cert. denied*, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (1973) (forewarning requirement applied in case of indictment dismissed without prejudice).

2. Talbot and Grossman contend that the government should be charged with constructive knowl-

edge of the court's authority to dismiss the information. *See United States v. Henry*, 815 F.Supp. 325, 327 (D.Ariz.1993). *Henry* is inapposite to the facts before us, however. In *Henry*, the government did not present Henry's case to the grand jury until nearly four years after the alleged crime occurred. Dismissing the indictment under Rule 48(b), the court reasoned that *"[i]n these circumstances, the government is charged with the constructive knowledge of the Court's statutory authority pursuant to Rule 48(b) and that is warning enough." Id.* (emphasis added). We find no similar evidence of prosecutorial neglect in the facts before us. Talbot and Grossman received citations immediately upon their arrest; the government filed the information and added the third count only nine months later. The government filed four separate motions on the case between January and October of 1993. We see no reason to apply the rationale of *Henry* to this case.

3. Rule 325–1(i) reads, in relevant part, "the agenda at the pretrial conference shall consist of the following items [including] … [p]retrial exchange of lists of witnesses intended to be called in person or by deposition to testify at trial.…"

ment offers no excuse for its delay. As a violation of a "specific discovery order" has been demonstrated, the district court was free to exclude the government's witness.[4] We find no abuse of discretion and thus affirm the court's exclusion order.[5]

## IV

 Finally, we review the district court's dismissal of the section 304 count. 41 C.F.R. § 101–20.304 ("section 304") provides that "[p]ersons in and on [federal] property shall at all times comply with official signs of a prohibitory, regulatory, or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals."

In dismissing the section 304 count, the district court reasoned that such a charge

> would not stand without the underpinnings of the lawful order within the context of these regulations; and, therefore, there would have to be a lawful order within the context of those regulations, i.e., an order as has been alleged under 302.

The court premised its reasoning upon this court's holding in *United States v. Stansell*, 847 F.2d 609 (9th Cir.1988).

In *Stansell*, appellants challenged their convictions under section 304, claiming that the regulation was unconstitutionally vague and overbroad. In analyzing the appellants' claims, the court first articulated the standards for vagueness and overbreadth. To avoid vagueness, the court explained, a penal regulation must " 'define the criminal offense with sufficient definiteness that ordinary people can tell what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' " *Id.* at 615 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903

(1982)). Likewise, the overbreadth doctrine invalidates those regulations that " 'delegate[ ] standardless discretionary power to local functionaries.' " *Id.* at 613 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1972)). To avoid being unconstitutionally vague or overbroad, the court concluded, a regulation must be capable of a limited interpretation such that (1) ordinary people could understand what conduct is prohibited, and (2) those enforcing the law are provided with clear standards to constrain them.

The court in *Stansell* concluded that 41 C.F.R. § 101–20.3, the subpart that contained section 304, provided just such a limiting construction. "[T]he entire context of that subpart," the court explained, "provides a limit to what may properly be reached under section 101–20.304." *Id.* at 614. "Given the limited construction that may reasonably be imposed on the regulation," the court continued, "section 101–20.304 identifies with sufficient definitiveness what a person must do, what type of orders and directions they must obey, and a fair warning of the types of conduct that is prohibited." *Id.* at 615–16. Likewise, when construed in its proper context, section 304 "is not a grant of unfettered discretion to FPS officials." *Id.* at 614.

*Stansell* prescribes a method of statutory construction, to be applied both by those governed by section 304 and by those enforcing it. The regulation, the court directs, is to be read within its context. Indeed, this is precisely how trial courts have interpreted *Stansell*'s mandate. *See United States v. Broussard*, 767 F.Supp. 1536, 1542 (D.Or. 1991) (reading *Stansell* as instructing trial courts to "determine the proper scope of the statute by a 'careful consideration of the complete regulatory scheme' ") (quoting *Stansell*, 847 F.2d at 614).

---

4. Although it is true that in non-capital cases, the defendant has no right to a list of prospective government witnesses, *see United States v. Dischner,* 974 F.2d 1502, 1522 (9th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993), in the instant case, the pretrial scheduling order required the government to produce a witness list before trial.

5. Unlike *United States v. Schwartz,* 857 F.2d 655, 659 (9th Cir.1988), the district court in the case at bar found that the government had violated

her pretrial order. The government concedes that it violated the order, albeit without willfulness or prejudice. The government does not argue that the court lacked authority to issue the pretrial order requiring disclosure of witnesses, so we do not decide whether the court had authority to issue the order. Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure is similarly inapplicable here; the dismissal in the case at bar took place prior to the effective date of the 1993 amendment adding Rule 16(a)(1)(E), so that it is irrelevant to this disposition.

*Stansell* does not, however, mandate a charging scheme. Nowhere does the court suggest that a charge brought under section 304 must be accompanied by a second charge under the same subpart. Indeed, in *Stansell* itself, the only charge which the government filed under 41 C.F.R. § 101–20.3 was the section 304 count. *See Stansell,* 847 F.2d at 610. The district court appears to have confused *Stansell*'s command that section 302 be construed in context with a command that it be charged in some specific manner. Consequently, we reverse the court's dismissal of the section 304 count.

## V

In sum, we reverse the district court's dismissal of both the section 304 and section 305 counts and remand for trial; however, we affirm the court's exclusion of the government's witness and dismissal of the related count.

AFFIRMED in part, REVERSED in part, and REMANDED for trial.