UNITED STATES of America,
Plaintiff–Appellant,

v.

Charles Edward HUNTLEY,
Defendant–Appellee.

No. 90–10151.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided Oct. 6, 1992.

Harry Litman, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Karen L. Snell, Asst. Federal Public Defender, San Francisco, Cal., for defendant-appellee.

Before: BOOCHEVER, NORRIS and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The district court dismissed the indictment against Huntley because of preindictment delay, under the Fifth Amendment Due Process Clause and Federal Rule of Criminal Procedure 48(b). We vacate and remand. Adequate prejudice was not proved for the Due Process challenge, and the forewarning and caution requirements were not satisfied for Rule 48(b).

### I. Facts.

Huntley was indicted July 12, 1989, for a crime committed on November 27, 1988, 7½ months earlier. The indictment accused him of being a felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1) and 924(e)(1). At a hearing on a motion to

suppress the revolver, the judge asked the government to explain the delay. The prosecutor explained that the federal authorities did not want to interfere with ongoing state parole proceedings:

> The primary reason for the delay, we had originally filed the complaint back in January of '89, at that point Mr. Huntley was still going through the state parole process, and so rather than pulling him out of state custody and having him go back and forth we waited until he came in on our writ then before actually returning the indictment.

At the suppression hearing, the police officer who had arrested Huntley testified that he had seen Huntley place a paper bag under the car he and three other men were parked in, stopped Huntley as he walked away from the car and advised him of the possibility that he could be arrested for littering, and then after picking up the bag and finding a gun in it, arrested Huntley.

A federal complaint had been filed against Huntley in January, and an arrest warrant had then been issued, but the warrant was not served, and he was not then indicted. The affidavit in support of the complaint stated that the federal investigator had been advised in December by the Oakland city police officer of the arrest, and had investigated in December and determined that a federal crime had been committed. The United States Marshal had issued a detainer[1] to the Alameda County Jail in January, but Huntley did not receive notice of it. The Marshal sent a detainer to San Quentin State Prison in March, and this time Huntley was advised and demanded a speedy trial. The Marshal sent a third detainer to California State Prison at Avenal in June.

Huntley's attorney swore in her affidavit that her investigator had interviewed the other men in the car in November, and they said Huntley was away from the car when the police officer drove up. Huntley's brother Alonzo, Akabar Delaney, and Cornelius "Ditto" Delaney all said they had not seen a gun or paper bag in Huntley's possession, and Huntley was out of the car when the police officer pulled up. Huntley's attorney had successfully served Akabar Delaney with a subpoena for trial. Messages to Huntley's brother Alonzo at their mother's house went unanswered, and she had not been able to find him in Los Angeles. Cornelius "Ditto" Delaney was on trial for sexual assault and his attorney told Huntley's attorney that if she served Ditto with a subpoena, he would refuse to testify. She had tried to subpoena the police communications tapes for the time of the arrest, "to verify that the police did not discover the gun until they had been on the scene at least 20 minutes," but was informed that the tapes are only kept four months, so they no longer existed. She opined that there was a "significant possibility" that Alonzo and not his brother had put the gun under the car, because at the time "Alonzo was recovering from a gun shot wound."

The judge dismissed the indictment with prejudice. As background for his decision, he explained that federal judicial resources were scarce, Huntley was a state offender on state parole arrested by a state officer, subjected to state parole violation proceedings, and he questioned the use of federal resources on the case. The preindictment delay was analyzed by the district court under the two-part Due Process test. Prejudice was found because of unavailability of the three people in the car and the tapes, failure to advise Huntley of the January

---

1. The detainers in this case are in the form of requests by the United States Marshal to the state jail or prison. The operative words are: "When the subject is to be released from your custody, please notify this office at once so that we may assume custody if necessary." The detainers do not purport to take custody or command the state facility. They only request notice of impending release. "A detainer notifies the incarcerating authorities that the prisoner is wanted, and requests that the authorities desir-

ing custody be forewarned of the prisoner's release date so that they can arrange to pick him up at the institution. Filing a detainer is an informal process; it does not bind the requesting authority to act (and roughly half are never acted upon), nor does it bind the incarcerating authorities to hold the prisoner, although this is usually done as a matter of comity between sovereigns." 2 W. LaFave & J. Israel, *Criminal Procedure* § 18.4(a), at 418 n. 5 (1984).

detainer, failure to prosecute during the state proceedings, and late disclosure of a confession Huntley had made. The dismissal was under the Due Process Clause and also Federal Rule of Criminal Procedure 48(b).

## II. Standard of Review.

■ We review for abuse of discretion the district court's decision to dismiss an indictment for preindictment delay, under both the Fifth Amendment Due Process Clause and Rule 48(b). *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1050 (9th Cir.1990) (Fifth Amendment); *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737 (9th Cir.1989) (Rule 48(b)). A finding of prejudice is reviewed under the clearly erroneous standard, but in applying this standard, "we must keep the defendant's heavy burden in mind." *United States v. Moran*, 759 F.2d 777, 782 (9th Cir.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986).

## III. Due Process.

Delay between commission of the crime and indictment is generally limited by the statute of limitations, but in some circumstances the Due Process Clause requires dismissal of an indictment brought within the limitations period. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Although Huntley argued alternatively in the district court that his right to a speedy trial under the speedy trial clause of the Sixth Amendment had been violated by the preindictment delay, the district court did not reach this issue in dismissing the indictment. On appeal, Huntley has not renewed this argument. Therefore, we do not address whether dismissal would be proper under the Sixth Amendment.

■ We apply a two-part test to determine whether preindictment delay denied due process: (1) the defendant must prove actual, non-speculative prejudice from the delay; and (2) the length of the delay, when balanced against the reason for the delay, must offend those " 'fundamental conceptions of justice which lie at the base

of our civil and political institutions.' " *United States v. Sherlock*, 962 F.2d 1349, 1353–54 (9th Cir.1992) (citing *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977)).

■ Before reaching the balancing portion of the test, the court determines whether prejudice is sufficiently proved. The task of establishing the requisite prejudice for a possible due process violation is "so heavy" that we have found only two cases since 1975 in which any circuit has upheld a due process claim. *United States v. Barket*, 530 F.2d 189 (8th Cir.1976); *Howell v. Barker*, 904 F.2d 889 (4th Cir. 1990). *See United States v. Loud Hawk*, 816 F.2d 1323, 1325 (9th Cir.1987). We have in the past emphasized that protection from lost testimony, as well as other evidence, "generally falls solely within the ambit of the statute of limitations." *See Moran*, 759 F.2d at 782 (citing *United States v. Pallan*, 571 F.2d 497, 500–01 (9th Cir.1978)). To establish actual prejudice, therefore, the defendant must show that the loss of testimony meaningfully has impaired his ability to defend himself. *Pallan*, 571 F.2d at 500; *see, e.g., Sherlock*, 962 at 1354. The proof must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to the defendant's case. *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1050; *United States v. Moran*, 759 F.2d 777, 782 (9th Cir.1985), *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). Actual prejudice makes the due process claim concrete and ripe for adjudication, but does not make it valid. *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977).

■ In this case, Huntley's proffer could not bear his heavy burden. Of his three witnesses, two were located. Akabar Delaney had been served with a subpoena, so he was available for trial. Ditto Delaney was located, but refused to testify because of his risk of self-incrimination. The only witness who was unavailable in the sense that defense counsel had not found him was Huntley's brother Alonzo, but the government gave defense counsel Alonzo's parole

officer's telephone number, so his unavailability was not well established. Alonzo, like the Delaneys, had said that the defendant was out of the car when the police officer arrived, and that he had not observed a gun or paper bag in defendant's possession. This testimony was of only speculative value. Even if Alonzo had been located and had testified credibly to this effect, nevertheless Huntley could have had the gun without his brother noticing it, and the officer could have seen Huntley put it under the car before Alonzo and the Delaneys noticed the officer pulling up. Since Huntley's attorney speculated that Alonzo and not the defendant had put the gun under the car, and might therefore blame the crime on Alonzo, who had his own entanglement with the criminal law system, he might well have refused to testify, even if he had been located. *Cf. United States v. Wallace,* 848 F.2d 1464, 1470 (9th Cir.1988). In any event, Alonzo's testimony would be merely cumulative with that of Akabar Delaney, and the evidence as to the value of Alonzo's testimony was too speculative to demonstrate that its loss impaired Huntley's ability to defend himself.

■ As for the police communication tapes routinely destroyed in four months, Huntley's attorney could only speculate that they would show that the police were on the scene for 20 minutes before they discovered the gun. Even if the tapes did support this proposition, it is hard to see how it would prove Huntley did not put it under the car. He could well have put the gun under the car, yet the police might not have checked under the car for a while after the stop. The defense had only speculation and weak inferences to suggest that the tapes would have been exculpatory. *Cf. United States v. Sherlock,* 962 F.2d 1349, 1354 (9th Cir.1992) (no actual prejudice was demonstrated by loss of a police "rape kit" because the evidence was unlikely to be exculpatory to the charge of assault with intent to commit rape).

As for the remaining prejudice found by the district court, we cannot see how Huntley was prejudiced by the January detainer, of which he remained ignorant. It had no effect on him. The late disclosure to his attorney of Huntley's confession was unrelated to preindictment delay. The federal decision not to prosecute during the state proceedings was a policy decision, more properly seen as the explanation of the delay, than as prejudice caused by the delay.

■ We conclude that the district court's finding of prejudice was clearly erroneous, in light of the defendant's heavy burden to establish actual non-speculative prejudice by definite proof. Since prejudice was not established, the district court could not properly reach the second prong of the due process test, balancing the length of the delay against the reasons for it. Nor have we found a case where a preindictment delay as short as the 7½ month delay in this case has been found to violate the "fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977). The proposition seems far fetched.

## IV. Rule 48(b).

■ A district court may dismiss an indictment under Federal Rule of Criminal Procedure 48(b) "[i]f there is unnecessary delay in presenting the charge to a grand jury." Although the rule confers discretion upon the district judge, a Rule 48(b) dismissal "should be imposed only in extreme circumstances." *United States v. Sears, Roebuck & Co.,* 877 F.2d 734, 737 (9th Cir.1989). In analyzing a Rule 48(b) claim based on post-indictment (speedy trial) delay in *United States v. Simmons,* 536 F.2d 827 (9th Cir.1976), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 we adopted a Seventh Circuit rule of forewarning. We have not yet had occasion to consider application of this rule to preindictment delay. Although *Sears, Roebuck* involved post-indictment delay, the rule was articulated and explained by then-Circuit Judge John Paul Stevens, in the context of preindictment delay:

"Rule 48(b) is a codification of the inherent power of a court to dismiss a case for want of prosecution." In order to maintain control of its calendar, a court has the power to require the parties to proceed with diligence and to meet deadlines

established by court rule or order. If cases are completely inactive for prolonged periods, or perhaps simply too old to be kept on an active calendar, a court surely has power to enter an order of dismissal for want of prosecution even though neither litigant has been prejudiced by the delay. Moreover, the court may properly threaten to enter such an order as a means of requiring litigants to pursue their matters to an expeditious conclusion. But if no unusual circumstances are shown, past delay does not justify dismissal of a case which is in fact going forward with appropriate speed.

. . . .

The order rested on the court's holding that a period of approximately *eight months of unnecessary preindictment delay* required dismissal. We have no doubt that a district court has the power to promulgate a rule which would lead to the dismissal of indictments after such a period of unnecessary or unexplained delay. However, such a rule should be applied uniformly within the district and enforced only after the United States Attorney is aware that such a consequence will automatically follow a delay of that magnitude. Absent such forewarning, or some other showing justifying an exercise of discretion in this particular case, we hold that it was error to dismiss the indictment simply because unnecessary delay of approximately eight months occurred before the indictment was returned.

*United States v. Clay*, 481 F.2d 133, 137–138 (7th Cir.1973), *cert. denied*, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 247 (emphasis added, footnotes omitted). Because the reason for the rule applies equally to the preindictment context when the court has obtained control of the case by the filing of a complaint, we see no ground for a distinction. The judge could not properly dismiss under Rule 48(b) without forewarning. For example, if the court had a reasonable concern about the old complaint and unreturned arrest warrant, it might have ordered the government to obtain an indictment within some reasonable time or show cause why the complaint should not be dismissed. Forewarning was not given, so we have no occasion to determine whether it would have been appropriate in the circumstances.

In addition to the forewarning rule, caution must be exercised before imposing the "harsh remedy" of a Rule 48(b) dismissal. *United States v. Sears, Roebuck and Co.*, 877 F.2d 734, 738 (9th Cir.1989); *United States v. Hattrup*, 763 F.2d 376, 377–78 (9th Cir.1985). The term "caution" is used in this circuit in a non-obvious, technical sense. Caution requires findings of prosecutorial misconduct and actual prejudice to the accused. *United States v. Gilbert*, 813 F.2d 1523, 1531 (9th Cir.1987), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127. Generally, dismissal is proper under Rule 48(b) only for delay that is purposeful or oppressive. *United States v. Sears, Roebuck and Co.*, 877 F.2d 734, 739 (9th Cir.1989).

The judge did not warn the government, either by order in this case, or by general rule or order applicable throughout the district, that indictments would be dismissed for preindictment delay of this magnitude, so the forewarning requirement was not satisfied. The caution requirement was not satisfied, because no actual prejudice was demonstrated, as we discuss above. Nor was there prosecutorial misconduct in allowing the state proceedings to be completed before initiating the federal proceedings. That was an executive policy judgment in the exercise of prosecutorial discretion with which a judge might disagree, but which could not be characterized as misconduct. Availability of prosecution by another jurisdiction is a traditionally recognized ground for the exercise of discretion not to prosecute. *United States v. Lovasco*, 431 U.S. 783, 794 n. 15, 97 S.Ct. 2044, 2051 n. 15, 52 L.Ed.2d 752 (1977).

Justice Marshall's opinion for the court in *Lovasco* teaches that the Due Process Clause does not require the government to indict people promptly when it has probable cause, or even when it has proof beyond a reasonable doubt. One reason is that subsequent developments may incline the executive branch to exercise its prosecutorial discretion not to indict. If the government is forced to indict too soon, it may indict

too many. What a tragedy it could be if a person were indicted because the government needed to preserve its rights, yet the person would not have been indicted had the government had more time to exercise discretion after awaiting the course of other proceedings. In this case, Huntley's attorney argued that the federal government was indicting Huntley only because he had turned down a plea bargain in state court which would have satisfied the federal authorities. The court found that the federal prosecutors had delayed indictment until state proceedings had been completed. Waiting to see what will happen in the state proceedings is a good reason for delay. Depending on the outcome in the state proceedings, the federal prosecutors might well have decided not to indict at all. In these circumstances, the finding of prejudice was clearly erroneous, and the absence of forewarning and caution, in the technical sense of our Rule 48(b) authorities, rendered the dismissal an abuse of discretion.

The order of dismissal is VACATED, and the case is REMANDED for further proceedings.